STATE ex rel. SHORT, Atty. Gen., v. WHITE.

No. A-6002.  Opinion Filed Feb. 13, 1928.
(264 Pac. 647.)

George F. Short, Atty. Gen., V. P. Crowe, Asst. Atty. Gen., and J. K. Wright, Co. Atty., for the State.

Roy St. Lewis, U. S. Atty., for respondent.

DOYLE, P. J. This case originates in this court by an application for a writ of habeas corpus ad prosequendum, duly verified and filed in this court by George F. Short, Attorney General, as follows: :

"Your petitioner, the state of Oklahoma, by George F. Short, Attorney General of the State of Oklahoma, represents and states to this honorable court that on the 27th day of November, 1925, one Art Neff, whose more true name is unknown, committed the crime of manslaughter in the county of Oklahoma, state of Oklahoma; and that a preliminary information was filed against the said Art Neff in the justice court in and for Oklahoma City justice district, Oklahoma county, state of Oklahoma, before W. P. Hawkins, justice of the peace of said district, on the 28th day of November, 1925, charging the said Art Neff with the crime of manslaughter in said county and state, a copy of said preliminary information being attached hereto, marked 'Exhibit A,' and made a part hereof.

"That a warrant for the arrest of the said Art Neff was duly issued on and pursuant to said preliminary information on the 28th day of November, 1925, addressed to the sheriff or any constable of said county, for the arrest of said Art Neff for said crime, a copy of which warrant is attached hereto, marked 'Exhibit B,' and made a part hereof.

"That said warrant for the arrest of said Art Neff was duly and regularly placed in the hands of the duly elected, qualified, and acting sheriff of the county of Oklahoma, state of Oklahoma, for service upon the said Art Neff; but that the said sheriff, since said date, has been and is now unable to serve the said warrant upon the said Art Neff, or to arrest and take isto custody the said Art

Neff because, since the issuance of said warrant aforesaid, the said Art Neff has at all times been and now is held in the custody and under the control of the United States government and subect to the supervision and control of the Attorney General of the United States, the said Art Neff being so held by virtue of a judgment and sentence imposed upon him on the 28th day of November, 1925, by the United States District Court for the Northern District of Oklahoma, confining him to the federal penitentiary at Leavenworth, Kan., to serve a sentence of eighteen months in said federal penitentiary.

"Your petitioner further states and shows that the said Art Neff should be returned to Oklahoma county, state of Oklahoma, to answer said charge of manslaughter aforesaid at this time and before the expiration of his federal sentence imposed by the federal District Court aforesaid, because delay in his trial on said charge of manslaughter would greatly aid him to escape punishment therefor through the disappearance of witnesses, and because of their memory becoming less accurate, and the said Art Neff would thereby be furnished an opportunity to avoid the full expiation of his crimes.

"Your petitioner further states that if and while the said Art Neff is held under the custody of the officers of the state of Oklahoma for trial on the charge aforesaid, he will be kept safely from escape or from danger, that he may be returned to the United States government to finish serving his sentence so imposed by said sovereignty aforesaid, after the completion of his said trial by the state of Oklahoma on the charge of manslaughter aforesaid; and that, if convicted upon said manslaughter charge, the sentence imposed therefor may date from the expiration of the sentence imposed by the federal court aforesaid.

"Your petitioner further states and shows that the Attorney General of the United States has consented that the said Art Neff may be surrendered to the authorities of the state of Oklahoma, that he may be tried on the charge of manslaughter aforesaid.

"Your petitioner further states and shows that the said Art Neff is now in the custody of Ewers White,

United States marshal for Western District of Oklahoma, at Guthrie, Okla., within the territorial confines of the state of Oklahoma, and within the territorial jurisdiction of this court.

"Wherefore your petitioner prays your honorable court to grant a writ of habeas corpus ad prosequendum for the said Art Neff, and that he, the said Art Neff, be remanded to the custody of the sheriff of Oklahoma county, state of Oklahoma, that he may be prosecuted upon the said charge of manslaughter aforesaid by the state of Oklahoma, and that he may do and perform the things enjoined upon him by the courts of the state of Oklahoma."

In response to the writ the respondent filed the following reply:

### "Return to Writ.

"Comes now Ewers White, United States marshal for the Western District of the state of Oklahoma, and for his return to the writ of habeas corpus ad prosequendum issued herein, states:

"That said Art Neff was placed in his custody on the 12th day of January, 1926, upon delivery from the representative of the warden of the United States penitentiary located at Leavenworth, Kan., pursuant to an order of Hon. John H. Cotteral, Judge of the United States District Court for the Western District of Oklahoma, dated January 9, 1926. A copy of which order in writing is attached hereto.

"In response to the petition and in obedience to the writ of habeas corpus ad prosequendum issued herein, by and with the advice and consent of the Attorney General of the United States and the United States district attorney for the Western District of the state of Oklahoma, I have this day delivered the said Art Neff to the custody of the sheriff of Oklahoma county, Okla., who stands responsible for his safe-keeping, pending his return under proper orders of the court, to the authorities of the United States of America.

Ewers White, United Sta es Marshal for the Western District of Oklahoma."

In this case the proceedings had were in conformity with the decision of the Supreme Court of the United States, in the case of Ponzi v. Fessenden, 258 U. S. 254, 42 S. Ct. 309, 66 L. Ed. 607, 22 A. L. R. 879. Mr. Chief Justice Taft, delivering the opinion of the court, said:

"We live in the jurisdiction of two sovereignties, each having its own system of courts to declare and enforce its laws in common territory. It would be impossible for such courts to fulfill their respective functions without embarrassing conflict unless rules were adopted by them to avoid it. The people for whose benefit these two systems are maintained are deeply interested that each system shall be effective and unhindered in its vindication of its laws. The situation requires, therefore, not only definite rules fixing the powers of the courts in cases of jurisdiction over the same persons and things in actual litigation, but also a spirit of reciprocal comity and mutual assistance to promote due and orderly procedure.

"One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that. He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. Re Andrews (D. C.) 236 F. 300; United States v. Marrin (D. C.) 227 F. 314. Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it, and of its representatives with power to grant it. * * *

"In the case at bar, the federal District Court first took custody of Ponzi. He pleaded guilty, was sentenced to imprisonment, and was detained under United

States authority to suffer the punishment imposed. Until the end of his term and his discharge, no state court could assume control of his body without the consent of the United States. Under statutes permitting it, he might have been taken, under the writ of habeas corpus, to give evidence in a federal court, or to be tried there, if in the same district (section 753, Rev. Stat.; Comp. Stat. § 1281; 3 Fed. Stat. Anno. (2d Ed.) p. 462), or be removed by order of a federal court, to be tried in another district (section 1014, Rev. Stat.; Comp. Stat. § 1674; 2 Fed. Stat. Anno. (2d Ed.) p. 654), without violating the order of commitment made by the sentencing court (Ex parte Bollman, 4 Cranch, 75, 98, 2 L. Ed. 554, 562; Ex parte Lamar (C. C. A.) 274 F. 160. 164 (24 A. L. R. 864). This is with the authority of the same sovereign which committed him.

"There is no express authority authorizing the transfer of a federal prisoner to a state court for such purposes. Yet we have no doubt that it exists and is to be exercised with the consent of the Attorney General. In that officer, the power and discretion to practice the comity in such matters between the federal and state courts is vested. * * *

"But it is argued that when the prisoner is produced in the superior court, he is still in the custody and jurisdiction of the United States, and that the state court cannot try one not within its jurisdiction. This is a refinement which, if entertained, would merely obstruct justice. The prisoner, when produced in the superior court, in compliance with its writ, is personally present. He has full opportunity to make his defense exactly as if he were brought before the court by its own officer. State v. Wilson, 38 Conn. 126, 136. The trial court is given all the jurisdiction needed to try and hear him by the consent of the United States, which only insists on his being kept safely from escape or from danger, under the eye and control of its officer. This arrangement of comity between the two governments works in no way to the prejudice of the prisoner or of either sovereignty."

Upon his preliminary examination the prisoner, Art

Neff, was held to answer to the district court of Oklahoma county, as provided by law. On information filed in the district court of said county defendant was placed on trial on February 9, 1926, and was by a verdict of a jury found guilty of manslaughter in the first degree and his punishment fixed at imprisonment in the penitentiary for the term of twelve years. Motion for new trial was duly filed and overruled and judgment rendered in pursuance of the verdict. Thereafter by proper orders the prisoner was remanded to the custody of the United States marshal for the Western District of the state of Oklahoma.

EDWARDS and DAVENPORT, JJ., concur.